Chicago, Burlington and Quincy Railroad Co. *et al.*
*v.*
The City of Naperville.

*Opinion filed November 8, 1897.*

1. Eminent domain—*effect where money deposited by city to cover judgment is raised by private parties.*  Where a city, as provided in sections 14 and 15 of article 9 of the City and Village act, (Rev. Stat. 1874, p. 234,) deposits the amount of a condemnation judgment and costs and executes its bond for future damages, in order that it may at once take possession of the condemned property though an appeal is pending, it is immaterial, so far as the defendants are concerned, that the money deposited is raised by private parties instead of in the manner provided by the condemnation ordinance.

2. Same—*fact that private parties contribute to expense of condemnation does not affect the proceedings.*  Where a city council has determined that the extension of a public street across a railroad is a public necessity, the fact that private parties contribute to the expense thereby incurred does not vitiate the proceedings nor tend to prove that the extension of the street is not a public necessity.

Appeal from the Circuit Court of DuPage county; the Hon. C. W. Upton, Judge, presiding.

This is an appeal from an order, entered by the circuit court of DuPage county, granting to the city of Naperville authority to enter upon and take possession of and use certain premises of the appellants, condemned for the purpose of opening and extending Center street across the depot grounds of the appellant railroad company in the city of Naperville.  Appellant, Boecker, occupied a portion of the land, proposed to be taken for the street, under a lease from the railroad company, and had a coal shed on the land in which he kept coal for sale.

On February 1, 1896, the city council of Naperville passed an ordinance, ordaining that Center street be opened and extended at the width of sixty-six feet from the south line of the yards, lands, etc.; and that said improvement should be made, and the cost thereof paid for,

by special assessment to be levied upon the property benefited thereby to the amount that the same might be legally assessed therefor, and that the remainder of such cost should be paid by general taxation, in accordance with article 9 of the City and Village act.   On February 25, 1896, the city of Naperville filed its petition in the circuit court, praying that just compensation be ascertained for private property to be taken or damaged by the improvement specified in the ordinance.   The appellants, the Chicago, Burlington and Quincy Railroad Company and Bernard B. Boecker, were made defendants to the petition.   The railroad company filed its cross-petition to ascertain damages to its property not taken.   A trial was had before a jury on the petition and cross-petition, and, by verdict of the jury, the sum of $150.00 was awarded to the railroad company for property taken, and $1.00 for damages to property not taken; and the sum of $449.00 was awarded to the appellant, Boecker, for buildings taken, and $1.00 for his leasehold interest.   Motions for a new trial and in arrest of judgment were overruled, and judgments were rendered for the amounts of the awards respectively, as so made by the jury.   Appeals were taken from the judgments thus rendered by the court upon the findings of the jury to the Supreme Court of the State.

The judgments, fixing the amounts of compensation for the property taken and for damage to the property not taken, were entered on or about April 10, 1896; and the appeals therefrom were perfected upon that day. Afterwards, on May 7, 1896, the petitioner, the city of Naperville, made a motion before the court for an order, directing with whom it should deposit the amount of the judgments so awarded to appellants, together with the costs of the suit, in case said appellants, or either of them, should refuse to accept said amount, and also to fix the amount of the bond to be filed in said circuit court to secure to appellants any future compensation, which

might at any time be finally awarded to them or either of them in said cause. Thereupon, the court entered an order, that the city might deposit with the county treasurer of DuPage county for appellants the amounts of their respective judgments and costs, and at the same time fixed the amount of the bond above mentioned at the sum of $3000.00 to be conditioned as provided by law. To these orders appellants made the objection, that petitioner did not have on hand, or in its treasury, any funds legally available for the purpose of paying said judgments, or which it might legally use for that purpose; and that it had not deposited any of its funds with the county treasurer of DuPage county for the purpose of paying said judgments, and had not authorized any of its officers, agents or attorneys to deposit with the county treasurer the amounts of compensation awarded the respondents, etc. These objections were overruled and exceptions were taken. On the same day there was deposited with the county treasurer $601.00, being the amounts of said judgments respectively, and the costs due thereon; and the city presented its bond in the sum of $3000.00, as ordered by the court, and the same was filed and approved. Thereupon the court made the order, which is appealed from in this case, that the proceedings under the ordinance to take possession of said premises, sought to be condemned, should not be delayed; and that the city should have the right to immediately enter upon, and take possession of said premises. The orders and rulings of the court in this regard were duly excepted to.

A. J. Hopkins, F. H. Thatcher, and F. A. Dolph, (O. F. Price, and Chester M. Dawes, of counsel,) for the Chicago, Burlington and Quincy Railroad Company.

H. H. Goodrich, for appellant Bernard B. Boecker.

E. H. Gary, and John H. Batten, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

After appeals were taken from the judgments, awarding to appellants compensation for their property in the condemnation proceeding, the court, upon payment of the amounts of the judgments and costs into the county treasury, and upon the execution by the city of the bond in the sum of $3000.00, entered an order, permitting the city to take possession of the property sought to be condemned. As we understand the position of counsel for appellants, the only objection, made to the entry of this order in the court below, was, that the money, paid into the county treasury in discharge of the judgments, was raised by private parties in the city of Naperville, and was not raised by special assessment under section 53 of article 9 of the City and Village act, which provides for the filing of a supplemental petition to assess benefits.

The order, permitting the city to enter upon the premises condemned, is provided for by sections 14 and 15 of article 9 of the City and Village act. (1 Starr & Curtis' Stat. p. 591). Section 14 provides, that the judgment of condemnation "shall be final and conclusive as to the damages caused by such improvement, unless such judgment or judgments shall be appealed from; but no appeal or writ of error upon the same shall delay proceedings under said ordinance, if such city or village shall deposit, as directed by the court, the amount of the judgment and costs, and shall file a bond in the court, in which such judgment was rendered, in a sum to be fixed and with security to be approved by the judge of said court, which shall secure the payment of any future compensation which may at any time be finally awarded to such party so appealing or suing out such writ of error, and his or her costs." Section 15 provides, that "the court, upon proof that said just compensation so found by the jury has been paid to the person entitled thereto, or has been deposited as directed by the court (and bond given in

case of any appeal or writ of error) shall enter an order that the city or village shall have the right, at any time thereafter, to take possession of or damage the property, in respect to which such compensation shall have been so paid or deposited as aforesaid."

It is not denied, that the sum of $601.00, and the amount of the costs, were paid into the county treasury. It is not denied, that the city executed and filed the bond in the sum of $3000.00 as required by the court, and that such bond was approved. It is immaterial to the appellants how the money, which was paid into the county treasury, was raised or obtained by the city. It is sufficient, that the money was in the county treasury for the appellants, when they should choose to accept the same. Section 53 of article 9 of the City and Village act (1 Starr & Cur. Stat. p. 506) provides, that, "whenever any city or village shall apply to any court for the purpose of making just compensation for property taken or damaged by such proceedings as are authorized by this act, such city or village may file in the same proceeding a supplemental petition, praying the court to cause that an assessment be made for the purpose of raising the amount necessary to pay the compensation and damages," etc. But if private citizens should raise the money for the benefit of the city, in order to pay the judgments of compensation, we see no reason why the city should not accept such money, instead of waiting to raise the same by special assessment under section 53. The proceeding under that section would necessarily require time; and a resort to it would delay proceedings under the ordinance, although section 14 provides that no appeal or writ of error shall delay such proceedings upon making the deposit and filing the bond as above provided for. The condition precedent to the right to enter upon the premises after the taking of the appeal is the deposit of the money in the place required by the court, and the filing of the bond as directed by the court. The proceeding under section 53

at its final termination could only result in raising the necessary amount of money required for such deposit. The condition precedent to the right to enter upon the premises is not necessarily the institution of the proceeding under section 53, but the deposit of the money to be obtained as a result of that proceeding.

Counsel say, that all provisions of the statute in relation to condemning property for public use must be strictly pursued; and that all the forms prescribed by the statute must also be strictly followed. This is the rule in regard to special statutory provisions; but it is to be observed, that sections 14 and 15, as well as section 53, are among the special statutory provisions, which are thus required to be strictly pursued. The appellee in this case has proceeded in literal and strict accordance with the provisions of sections 14 and 15. Counsel say that private property must be condemned for public purposes, and cannot be condemned for the benefit of private parties, or for private use. This is undoubtedly true. But the opening of the street here across the right of way and the depot grounds of the railroad company is not for the benefit of private parties, although private parties may have contributed money to pay the judgments of condemnation which were rendered. The court and the jury, in a proper proceeding, fixed the amount of the compensation. Such amount was not fixed by the parties contributing the sums to pay the judgments; nor was the street when opened to be for the use of the parties so contributing, but for the use of the general public. It is in no sense true, therefore, that, here, the property to be condemned was to be devoted to a private use.

It is said, however, that the city did not make any appropriation of any particular amount for the payment of these judgments; that the city itself did not make the deposit with the county treasurer, but that such deposit was made by the attorneys, representing the city in this proceeding; that the city passed no resolution, author-

izing any of its agents or officers to make the deposit in question; and that the attorneys, to whom the money was paid, had no special authority from the city to collect the money, and pay it into the treasury for the city.   We cannot regard any of these objections as having any force or weight.   The money was paid into the treasury for the benefit of the city.   The city endorsed and adopted the act by executing the bond, required by the court, and by procuring an order to be entered, permitting it to enter upon the property condemned.   It does not lie in the mouth of appellants to complain as to the mode, in which the money was raised; because a party to a lawsuit can only complain of that which operates to his own injury. The correctness of the mode of obtaining the money is a matter to be settled between the municipal corporation and its officers or citizens, and is a matter with which the appellants have no concern whatever.

It is true, as is claimed by counsel, that, after verdict of the jury in a condemnation case and after judgment rendered thereon, the city has the election, either to pay the amount of the judgment and take the property, or to abandon the whole proceeding.   But even if the city should abandon the proceeding, no injury will result to the appellants, inasmuch as they have the deposit in the county treasury and the bond to rely upon for compensation and for damages.   Where the city abandons the proceeding after entry under the bond, it and its sureties will be bound to the extent of the damage done.   (*Centralia and Chester Railroad Co.* v. *Henry*, 31 Ill. App. 456).

Dillon, in his work on Municipal Corporations (sec. 596, 4th ed.) says:  "The mere fact that individuals have subscribed money, or given a bond to a city or town, to contribute towards the expense of laying out or altering a street, will not vitiate the proceedings, nor will it prove that the land was taken for the accommodation of private individuals, and not for public uses."   Where the mayor and aldermen of a city adjudge, that the laying

out or altering of a street is required by public safety and convenience, the fact of their taking a bond from an individual to contribute towards the expense does not prove, that the land taken is not appropriated to public use. If the public necessity and convenience require the improvement, it is immaterial at whose expense it is made; and a donation or contribution from individuals to relieve the burden upon the city has no tendency to prove that the enlargement of a street is not a public benefit. A street or highway is not the less public, because it accommodates some individuals more than others. (*Parks* v. *Boston*, 8 Pick. 217; *Copeland* v. *Packard*, 16 id. 217). In *Cummings* v. *Shields*, 34 Ind. 154, there was a proceeding to lay out and establish a highway, and the court said: "It appeared during the progress of the cause that one of the petitioners for the road paid into the county treasury a portion of the damages assessed in favor of the appellant, and objection is made to the proceedings on this account. We see nothing legally or morally wrong in a party desiring the establishment of a highway taking upon himself a part or all of the burthen of the damages assessed, by paying it into the treasury for the use of the party entitled to it."

Let it be supposed, that the parties, contributing the funds to pay these judgments, owned land, which would be benefited by the opening of the street across the railroad property, and that, under the proceedings authorized by section 53 aforesaid, their property would have to be specially assessed, in order to raise the money to pay the judgments. If these parties, instead of waiting for their property to be specially assessed in order to raise the money, should conclude to pay the money at once, what objection could there be in law or morals to the deposit of such money in the county treasury for the benefit of those owning the judgments? We see none. Appellants make no other objection to the entry of the order here appealed from, except the objection that the money

deposited was paid by outside parties for the benefit of the city, instead of being raised by special assessment under section 53. As we are of the opinion that this objection is not well taken, we see no reason for reversing the order of the circuit court. Accordingly the judgment of the circuit court is affirmed.

*Judgment affirmed.*